Clark v. Hemphill Artworks and the Mnookin Gallery, case number 24-2078. Hold on a second, Mr. Wright, hold on. Good morning. Good morning. May it please the court, Carter Reich, Carter Reich, PC, on behalf of the appellant Gwendolyn Clark. The sole issue on this appeal is whether or not the district court correctly determined at the pleading stage prior to any discovery that latches, precludes all of Gwendolyn's claims. It is our position that the district court erroneously found that her delay in pursuing her violent and abusive husband for a return of an artwork they jointly owned was unreasonable. As a matter of law, the district court ostensibly based this finding on the fact that she had demonstrated an ability to take her abusive husband to court, and because she stopped taking him to court for a return of the artwork, that that was unreasonable. Now, am I right that we're reviewing this challenge that you're making only with respect to the conversion claim? Correct. We're not appealing the district's court's finding that all of the other claims are not stated. And on the conversion claim, the district court on its 12B6 ruling found that you did state a claim if it was, if the conversion was not in good faith, that you hadn't stated a claim for good faith conversion. So we are looking at whether latches should apply on a bad faith conversion claim. Is that right? I just want to narrow the inquiry. Okay, please. Correct. And so the district court found that she had demonstrated an ability to pursue her abusive husband in the 80s for this artwork, and she stopped pursuing him. And they found that that was unreasonable. And then the court found that because of that, these defendants have suffered actual prejudice. But there was no showing of actual prejudice. And the unreasonableness in pursuing her abusive husband could not be found at the pleading stage. There needed to be discovery to fully vet whether or not her actions were reasonable or not. You know, I would submit that it would be unreasonable to expect her to continue taking her abusive husband to court for things when he had demonstrated that he doesn't comply with court orders. Well, I have a question I'm going to put to your adversary. So let me put it to you and be sure I understand what your position is. You claim they were not good faith purchasers, the defendants, because they purchased or acquired the painting after learning of plaintiff's claim. That's why you say they're not good faith purchasers, right? Correct. They were. They were aware that she was. And my I thought New York law was that latches is unavailable to a defendant who was aware that plaintiff was searching for and asserting a claim to a work before they wrongfully converted. So is latches that I mean, whether or not they were prejudiced, is latches even available if you can prove that they were not good faith purchasers? Our position is that it's not available. That's not the argument you made. You didn't argue that latches wasn't available at all on a bad faith conversion claim. So so help me out as to whether that's your position or not. It is our position, and we did argue that before the trial court. Now, this was a right, but not to us. So we did argue it as well in our briefs to this court. And, you know, that the the knowledge of it, having prior knowledge of the claim, you know, the prejudice element comes up in, you know, I did not know that this person was out there trying to make a claim. And because I didn't know they were out there, I took a position that they weren't bad faith purchasers. I know, but they didn't know. And it's it was it's been alleged and there's documents that show that they know and they knew before they converted the work for their own benefit. So in addition to them not showing actual prejudice, not showing a change in position, not showing that, you know, actual material evidence has been lost. You know, they just they just presumed, oh, the husband's dead. The gallery where they got the artwork from in 1976 is no longer in business. You know, they must have been prejudiced. Well, do you agree that given the district court's 12 B6 ruling, the only you are going to have to prove at trial that they knew before they purchased the painting, they knew that you were looking for it. If you can't prove that you're out. Yes. And I don't even think that's disputed right now. I mean, we have, you know, the fact that Hemphill Gallery admitted to her that they they you know, they were helping her look for the work since 2016. They sent they sent one of their employees to the Smithsonian Archive to help her find it. And then when when the work did finally show up at Mnuchin Gallery in September 2019, she went back to Hemphill and said, hey, great news. I found it. And they said, we actually sold that last summer and we helped them consign it. That's that's that's the bad faith theory. Yes. And then with regards to unclean hands theory. And with regards to Mnuchin, they actually contacted my client's daughter in January of 2019. So, I mean, that just shows you that there there's been no prejudice because they were able to trace this all the way back to my client. You say that you made this unclean hands or bad faith argument to us on appeal and you're going to have some time on rebuttal. Would you point out where in your brief you made this argument? Yes, absolutely. Thank you. Good morning. Good morning, Your Honors. May it please the court. My name is Eden Burgess. I'm with Schindler, Cohen and Hockman here in New York. And I am here representing the Hemphill defendants at police. So the functional point for this latches argument, Your Honors, is that Miss Clark intentionally waited for 40 years to bring her claim to this painting. She admits. How is that even an issue? If the complaint alleges colorably alleges, as the district court found that there's a bad faith conversion claim here that that you knew before you purchased the painting, that she was claiming it. Well, Your Honor, the the New York law is latches doesn't apply in those circumstances. Yeah, it is a heavy burden to prove. But you're you're correct, Your Honor, with respect to latches being unavailable with bad faith. However, in this particular case, the prejudice suffered by the defendants, which, by the way, Miss Clark waived in the trial court. So cannot now argue about whether there's been a sufficient allegation of prejudice in the pleadings. But I'm not make myself clear. Prejudice is something that can be considered in deciding whether latches apply. But if you purchased knowing that she was claiming it, I don't know how latches applies at all. My concern is that the district court treated latches in an kind of overall way. It didn't specifically discuss it in terms of a bad faith conversion claim. So how do you have a claim to latches if you're sued for bad faith conversion? Well, Your Honor, at this at this stage, as the court pointed out, there's no allegations of bad faith. It's unclear from the face of that. So. But with respect to latches and bad faith, by the time it couldn't be determined as a law. Yes. Matter of law on the present record. Yes, exactly. So that's that means you lost on that and that that it goes goes for further discovery on that question. Well, what I would argue, Your Honor, is that latches had attached in 2008 after Mr. After Mr. Clark, who's the estranged husband now deceased of the plaintiff. So after that, there was no way for the defendants to recover in any way or to be able to make any argument that or support to have his testimony to potentially defeat the bad faith claim. Because we don't have all the facts. All we have is what the allegations are and those are not sufficient. And her intent. There's never been a case that we're aware of in American jurisprudence where such an extreme and intentional delay where Ms. Clark says in her affidavit, says in her briefs that she intentionally chose never to go after the painting. Then it's highly it's impossible for the defendants to overcome that so many decades later. And that's what the latches law in New York really says, is that if it's an insurmountable prejudice, then it's not fair to the defendants to drag them into court. They had nothing to do with the alleged abuse. They had nothing to do with her. Her arguments with respect to why she didn't and felt afraid to. And so they're being dragged into court. They're a D.C. gallery. They're being dragged into court in New York decades later when it's too late for them to be able to defend themselves. And for us, that's the critical point. The part of the problem that I've got is that this is all on 12. Be six on a motion to dismiss. And as you know, we are to read that complaint in a way that's favorable entirely to Ms. Clark, the plaintiff. Yes. And this is an affirmative defense. How do you and you're asking us to read it, to read the complaint in a way that seems to me to be favorable to you, both with respect to the unreasonable delay component of latches, assuming that it applies, and also with respect to the prejudice component. How do we do that? Well, Your Honor, I wouldn't say we're asking you to read it in favor of the defendants. The trial court was very clear in both of its orders that it understood and accepted all the allegations as true, as well as with the affidavit, which one of the things that you say, for example, yes, is, well, you know, it's unclear. This whether the abuse by her husband was a legitimate reason for her unwillingness to pursue this artwork. But that that seems to contradict what is contained in the complaint. Well, Your Honor, it's in the complaint itself. There are contradictory statements that she makes, but she does readily acknowledge that after she's permanently separated and received the consent order, she was felt safe. She was living in peace with her daughter and all of those kinds of statements that appear on the face of the complaint and on the face of the papers that are properly before the court. Who had the painting up until 2008 in your view? Was it not the husband? Well, until 2008, I don't know the answer to that, Your Honor. Right. And so the complaint suggests that he had the painting at some point up through 2008. Yes. And she confesses that during that entire period, she was certain that he had it. He would never part with it because he felt emotionally connected. I still have difficulty understanding, though. You know, there's a lot of history and we can people have different understandings about what may have been going on or not going on. Nonetheless, when she came to your clients and alerted them to her desire to find the painting that she felt she had a right to, then they, as alleged anyway, went ahead and procured and facilitated the transfer and ultimate purchase by someone else of that same painting. Why isn't that actionable, at least on the facts as we know them now? And regardless of what, you know, how long she could have, you know, gone to, you know, get a divorce decree that spoke to the painting directly or spoken, what other things she could have done before the relationship between she and your client began? You know, I don't understand how you can defend a bad faith conversion claim on the basis of what happened 40 years ago and how quickly she should have done something back then. Well, Your Honor, of course we're accepting, as Judge Loewe pointed out, all the allegations as true. Even those allegations are a little, we have to accept them as true, and I recognize that. So, but by the time that action took place, I just keep going back to the fact that there's quite a lot of laches jurisprudence in this circuit and a lengthy delay of this type, even when there are allegations that there was some knowledge, when the laches has been such a long delay, particularly when prejudice was waived, that cannot be overcome. But with the delay between your client's interaction with her and her learning of the sale and bringing suit, was that not adequately prompt? I mean, I think you're trying to take advantage of the fact that 40 years passed and she may or may not have had an abusive relationship with her husband during that time. You know, we can look at the calendar and see the years passing. Nonetheless, your relationship, your client's relationship with her was over a relatively compressed period of time. Well, I think the word relationship may not be the proper one here, and that's she alleges in her papers that she went there, spoke to an employee, and informed them that there was a painting that she was looking for and that later she found it. But there was no relationship between them. She was never a customer. Well, I'm talking about the interaction. There was no duty between them. The interaction. Yes. That occurred. And as Judge Lays pointed out, and, you know, we're on a motion to dismiss. So I'm having difficulty understanding why that is enough to establish latches and preclude her from pursuing your client based on her allegations. Yes. So, again, going back to the case law of latches, which is extensive in this circuit, there are cases in which there have been allegations of a similar information, whether there was title insurance that was obtained or something like that, and those elements were not enough to overcome latches. So I would argue the same here, that the fact that there were some conversations and accepting her allegations is true that they related to a painting by this artist and that she was looking for it. Under the case law, as we have argued it, it is not sufficient to overcome her intentional selection and choosing to delay pursuing the painting for whatever reason. Thank you. We'll hear from Mr. Moran. Thank you. Good morning. Good morning. May it please the Court. Eric Moran, Greenberg Trag, on behalf of the Mnuchin Gallery. In the cases of Peters and Wertheimer, arguments were made that latches was not available because of the bad faith of the party asserting it. And in both of those cases, the courts found that there was no prejudice to the party against whom latches was being used. And under those circumstances, latches operated to foreclose a claim. There is a case called Reif v. Nagy in which there is some indicia that where someone knew about a claim before they took possession of a work, that latches was not available for that acquiring party to foreclose a claim by a plaintiff. But in that case, and I commend you to another part of that case, a very important distinction in that matter was that there could be no witness who could matter. That was a Nazi expropriation case. Here there is a witness. So if we focus not on Mr. Wallace Clark's death in 2008, but on the events that followed 2016, as I understand it, the artwork associated with Alma Thomas, the price zoomed, and so all of a sudden it becomes of great interest to the art world. Would you agree with that? That's alleged in the complaint in paragraph two. So the critical point is when there is a interaction, however you want to describe it, between Hemphill, that's sort of the beginning, and Mrs. Clark, and at that point there's an awareness that she's got a claim. She is interested in recovering this artwork. And they say, oh, we're going to help you. This is directed more at Hemphill, but Mnuchin is a beneficiary of all this because ultimately it is able to, I think through consignment, is that right, get the artwork? The work was consigned for a time to Mnuchin Gallery. Right. So that, it seems to me, is a critical time between 2016 and the start of litigation. Why is that wrong to view it as that's the frame? It's not wrong that that's a material time. But I would submit to this court that a much more critical time was the time prior, the time we spent much of our time devoted to, and here's why. But in terms of all the witnesses, the real witnesses to this bad faith conversion are here. Who cares about, I mean. Not at all, Your Honor, because in order to establish a conversion or any of her claims, what we're dealing with, bad faith conversion, she needs to establish a right to the property greater than those in possession of it. But latches is a defense on which the defendants bear the burden. I mean, this is in New York law that it's the defendant's burden to show that they did not know of the plaintiff's claim. Now, whether the claim is going to be one they can succeed on or not is another matter. But again, I'm looking at a Second Department decision. One of the elements of latches is a lack of knowledge or notice on the part of the offending party that the complainant would assert a claim for relief. It's not, oh, she's got a claim for relief, but she'll never prevail on it. That's not enough to excuse you and to allow latches. So I'm not sure how you can defend the judgment on conversion, on bad faith conversion, on latches ground. I would commend the court to the Peters case that we've cited, to the Wertheimer case that we've cited, which encounters this argument and evaluates the prejudice to both parties. And what's more, Your Honor, the focus in any conversion claim, and it wasn't alleged whether it was good or bad faith, on any conversion claim is a property interest in the work. But you lost the bad faith conversion claim was allowed to stand by the district court. So they've got a bad faith conversion claim. And if I understand New York law correctly, now you want to say she can't pursue it because of latches. But you then have to show a lack of knowledge or notice that the complainant would assert a claim. And whether or not, however much you might prevail on that after all the discovery is done, et cetera. I don't know how you prevail on it as a matter of law now. Well, Your Honor, the cases are clear that a party can prevail. And perhaps it's the uncommon case. But what we have in this case is a complaint that is drafted toward and anticipates this idea of latches. In paragraph two of the complaint, the plaintiff begins by saying, and I'm paraphrasing, they are going to say that I've slept on my rights until the painting became valuable. That's what she alleges. And she goes on in her complaint to itemize what she did and didn't do and inventory her efforts or lack thereof and the excuses for not taking those things. What's more, in this case, she had the opportunity to and she did put in a robust affidavit, 12 pages, with several exhibits. And so this is not a case in which the plaintiff, the appellant in this case, did not get her day in court on this issue of latches. In reviewing these cases, including Peters and Wertheimer, I do see that it is a consideration for the party asserting latches. It should be weighed, the conduct of both parties. But when a party asserting latches is confronted with an allegation to which there's only really one witness left, and it's an interested witness, an allegation that she has a greater right to the work than the party receiving it, and there are no other witnesses to that, when the party pursuing the claim knew about all the facts necessary to bring the claim in 1981, in 1982, and every year thereafter, and in fact did bring a claim and joined the issue in a litigation under those circumstances, it is our position that the latches is not foreclosed to a defendant. I'm looking at your briefs discussion of Wertheimer, and it doesn't, unless I've missed something, it doesn't say that the circumstances there were that the gallery knew that the plaintiff was claiming the work before it sold it. Is that part of the facts of the case? And if so, can you just point me to where in the case it says that so that I can look for it? And that was a replevant action. No, Your Honor, it doesn't. It doesn't say that. It says something I would submit. Well, it's a latches case for sure. Yeah, it is, Your Honor. The question here is whether latches can apply in a case to a party that the plaintiff alleges knew she was claiming the work. And I don't think Wertheimer speaks to it. I haven't had a chance to look at Peters. Do you say Peters is that case? At page 38 of Wertheimer, it says the doctrine of unclean hands does not preclude consideration of a latches defense, perhaps because of notice, implicitly because of notice. What was the unclean hands in that case? Because the Auten family, the family asserting the latches, allegedly attempted to create a false provenance for the painting. That's different from whether you knew before you acquired or sold it that the plaintiff was claiming or that there was a claimant to this. That's, I mean, you can have unclean hands in all kinds of ways. Okay. I think I understand. I don't want to dwell on this further. Thank you. We'll hear from Mr. Reich. Thank you. Your Honor's hit on all the issues. You were going to tell us where you raised it in your brief. Beginning on page 29 in our brief, we start talking about the fact that they were aware that she was out there looking for the artwork. Where did you make the argument? Well, it's in there that because they knew about it, they could not invoke latches. That's your response to their argument about prejudice. You don't argue that latches doesn't apply at all. Well, I cite cases, and before the district court, the case, the lone case I relied on before the district court was Reif v. Nagy, which was, you know, the whole point of that decision was they were aware that they were out there looking for it. You know, the complaint alleges that it doesn't use the word bad faith conversion, but the district court knew that what we were asserting was a bad faith conversion claim. And while I didn't call it bad faith, the fact that they knew she was looking for it, Hemphill was helping her look for it, and then they go and transact in it anyway, that's just bad faith, you know, plain and simple. And I just want to briefly just say I take, you know, exception to the characterization of her actions as she intentionally did this. You know, this is a woman that was the victim of extensive abuse at the hands of her husband, and I think it's unreasonable to expect her to bankrupt herself going after her husband just to get back possession of something she still owned, and to risk her life doing that. I think that's completely unreasonable. There's been no showing of actual prejudice. These defendants can tell you where the artwork is, and they can tell you everyone that owned it prior to all the way back to Wallace Clark, including what they paid for it. They should not be allowed to conceal information and then claim they've been prejudiced without actually showing it. And for these reasons, the decision is made. So Wertheimer seems to actually suggest that there may be circumstances under which unclean hands does not bar a latch's affirmative defense. What's your response to that? Well, my response to that is you have to go to discovery and you have to fully vet that claim, and that's why – It's a matter of New York law that suggests that that is not an absolute bar. Yes, and I don't necessarily think it's an absolute bar. I think it requires a balancing of the equities and truly – So we go back to prejudice? Is that – I'm sorry? So we return – is that an issue relating to prejudice? If it's not a bar, how do we assess that, the unclean hands? I mean, I think you have to assess it in the prejudice analysis, but I think it needs to be fully vetted after discovery, and you need to consider the actions of not just the plaintiff but also the actions of the defendant in determining unclean hands and whether latches applies. And the actions of the defendants are not clear in the face of the complaint, so that's why discovery should be required. This goes back to the motion to dismiss issue. Yes. All right. Thank you. Thank you very much.